UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| CHRISTOPHER LAMOND BELL, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No.   1:22-CV-093-CLC-MJD |
| | ) | |
| HAMILTON COUNTY, TENNESSEE, | ) | |
| JIM HAMMOND, and JOHN DOES 1–15, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | *Lead Case Consolidated with* |
| LUSTER D. DELONEY, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No.   1:22-CV-094-CLC-MJD |
| | ) | |
| HAMILTON COUNTY, TENNESSEE, | ) | |
| JIM HAMMOND, and JOHN DOES 1–15, | ) | |
| | ) | |
| *Defendants*. | ) | |

**MEMORANDUM & ORDER**

In these consolidated actions for violation of 42 U.S.C. § 1983, Plaintiffs, through counsel, allege that while they were held in the Hamilton County Jail ("Jail"), officers moved them to a pod with a "notorious reputation of being a place where new inmates were ganged up on and attacked" despite their objections, and various inmates then attacked them and caused them injuries. [Doc. 25 at 11–12; *Deloney v. Hamilton Cnty., et al.*, No. 1:22-CV-94, Doc. 6 at 5–6.] Now before the Court are (1) the John Doe Defendants' motion for summary judgment [Doc. 48] and the parties' stipulation of dismissal of these Defendants [Doc. 63]; (2) Defendant Hamilton County's motions for summary judgment as to Plaintiffs Bell [Doc. 53] and Deloney [Doc. 58]; (3) Defendant Hammond's motions for summary judgment as to Plaintiffs Bell [Doc. 55] and Deloney [Doc 60];

and (4) Plaintiffs' motion for an extension [Doc. 64]. Also before the Court are motions the parties filed in the member case, *Deloney*, No. 1:22-CV-94 [Docs. 49, 54, 56, 59, 61, 65].

The Court will address these filings in turn based on their substance.

## I. MEMBER CASE FILINGS

First, after the Court consolidated these cases pursuant to the parties' agreement and told the parties to file documents only in the lead case [Doc. 47 at 1–2], the parties filed a number of motions in the member case, *Deloney*, No. 1:22-CV-94 [Docs. 49, 54, 56, 59, 61, 65], which is improper.[1] Accordingly, the Clerk of Court is **DIRECTED** to terminate all pending motions in the member case [*id.*], and the Court will not address them further.

## II. MOTION FOR EXTENSION

Due to the parties' agreement, Plaintiffs' motion for extension [Doc. 64] is **GRANTED** to the extent that the Court considers Plaintiffs' response to the pending motions for summary judgment [Doc. 65] and Defendants' reply [Doc. 66] timely filed.

## III. JOHN DOES

Pursuant to the parties' stipulation [Doc 63], the John Doe Defendants are **DISMISSED**. Accordingly, these Defendants' motion for summary judgment [Doc. 48] is **DENIED as moot**.

## IV. SUMMARY JUDGMENT MOTIONS

### A. Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and

---

[1] Notably, Defendants Hamilton County and Hammond also each filed substantively identical motions and memoranda regarding each Plaintiff in this case [Docs. 54, 56, 59, 61], rather than one motion and memorandum addressing both Plaintiffs. And these substantively identical filings are in addition to other duplicative motions Defendants Hammond and Hamilton County filed in this case, which the Clerk already terminated. [*See, e.g.*, Docs. 51, 52, 57.]

the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario Ltd*, 224 F.3d 797, 800 (6th Cir. 2000). As such, the moving party has the burden of conclusively showing the lack of any genuine issue of material fact. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979). To successfully oppose a motion for summary judgment, "the non-moving party . . . must present sufficient evidence from which a jury could reasonably find for him." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 940 (6th Cir. 2010).

However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "The blatantly contradictory standard is a difficult one to meet and requires opposing evidence that is largely irrefutable[.]" *Amerson v. Waterford Twp.*, 562 F. App'x 484, 489 (6th Cir. 2014); *see also Jones v. Garcia*, 345 F. App'x 987, 990 (6th Cir. 2009) (observing that if the non-moving party's version of events "does not require such a suspension of reality that no reasonable juror could accept it . . . that is enough to allow a jury to hear the claim"). Objective evidence, such as video footage, can satisfy this standard. *See Scott*, 550 U.S. at 380–81 (finding that unambiguous video footage blatantly contradicted the plaintiff's account).

**B.     Proof**

    **1.     Undisputed Facts[2]**

On April 23, 2021, a stabbing incident occurred in "Echo 1," the Jail cell where Plaintiffs were housed. [Doc. 62 ¶ 4.] As Jail officers determined that this stabbing may have been related

---

[2] In their responses in opposition to Defendants' statement of undisputed facts, Plaintiffs purport to dispute some of these facts. [Docs. 65-2, 65-3.] However, for the reasons set forth below, the Court considers these facts as undisputed for purposes of summary judgment.

to gang member inmates attempting to control vulnerable inmates in the cell, Jail officers then attempted to determine where they could safely move the Echo 1 inmates. [*Id.* ¶¶ 4–5.] While Plaintiffs and other inmates resisted this movement, Jail officials have no record of either Plaintiff making an allegation of any specific threat or stating that they were incompatible with any person during this process. [*Id.* ¶¶6–7.] And "[i]nmates regularly claim they cannot be placed in a particular cell in order to attempt to manipulate cell assignments." [*Id.* ¶ 9.]

Because of Plaintiffs' classification status, Jail officers determined that "G4" would be the appropriate security area for them, as it housed members of Plaintiffs' own gang and did not house members of other rival gangs. [*Id.* ¶¶ 10–11.] Deputies then "spent several minutes unsuccessfully attempting to ascertain why [Plaintiffs] [and] other inmates did not want to be placed in G4." [*Id.* ¶ 12.] However, as Jail officers had required Plaintiffs and the other inmates to carry their property boxes with them, this "constituted a security risk as time passed." [*Id.* ¶ 13.] Also, "[t]ensions escalated among [the] inmates (including [Plaintiffs]) and deputies regarding placement in G4." [*Id.* ¶ 14.] Due to these "increasing security risks," officers eventually ordered the inmates into the G4 cell. [*Id.*] Officers conducted this "rehousing . . . pursuant to Jail Classification policy," "due to the significant security threat[,] and based on information known to [Jail officers] at that time." [*Id.* ¶ 15.]

A fight began soon after Plaintiffs and the other inmates entered G4. [*Id.* ¶ 16.] After this fight, Plaintiffs still "declined to make any complaint regarding any particular individuals." [*Id.* ¶ 19.]

The Hamilton County Sheriff's Office's policies governing the Jail's operations "meet or exceed the requirements of the Commission on Accreditation for Law Enforcement Agencies [], the American Corrections Association [], and Tennessee Code Annotated []," and the Tennessee

4

Corrections Institute regularly inspects the Jail. [*Id.* ¶ 20.] Also, the officers involved in the incident underlying Plaintiff's complaint completed "approximately six (6) weeks (240 hours) of initial training at the time their hire" and "receive at least [forty] hours of training annually since their initial instruction lasting 240 hours." [*Id.* ¶ 22.]

### 2. Plaintiffs' Allegations

First, Plaintiffs' counsel filed affidavits in response to Defendants' motions for summary judgment. [Docs. 65-4, 65-5.] In these affidavits, Plaintiffs' counsel swears to the truth and accuracy of Plaintiffs' responses to Defendants' statement of facts. [Doc. 65-4 ¶ 3; Doc. 65-5 ¶ 3.] In their response to Defendants' statement of undisputed material facts, Plaintiffs dispute Defendants' version of events by stating as follows: (1) Plaintiffs told officers not to put them in the cell with the attacking inmates; (2) video footage does not "appear to show" officers questioning Plaintiffs about their compatibility with any inmates in the relevant cell; (3) the Jail lacks any "meaningful policy or training" regarding officers checking inmates' compatibility with other inmates in cells prior to cell transfers; (3) video footage "disputes" the assertions that Plaintiffs initially protested the relevant cell change and that tensions or threats escalated during the walk leading to the cell transfer; (4) the inmates transferred into G4 immediately had to defend themselves; (5) Jail officers should be aware of the "'snitches get stitches' jailhouse culture" and should not require inmates to "publicly identify assailants due to potential repercussions"; and (6) written Jail policies may not always be followed. [Doc. 65-2 at 2–4; Doc. 65-3 at 2–4.]

Also in his affidavits, Plaintiffs' counsel swears that other exhibits attached to the response are true and accurate copies of documents Plaintiffs received from Defendants in discovery and/or documents "available through verified government or news websites." [Doc. 65-4 ¶ 4; Doc. 65-5 ¶ 4.] These exhibits include: (1) 14 pages of Hamilton County resolutions [Doc. 65-6]; (2) 644

5

pages of Hamilton County Sheriff's Office "Use of Force" and "Response to Resistance" reports [Docs. 65-7, 65-8]; and (3) video footage surrounding the incidents at issue in the complaints.

However, as Plaintiffs' counsel does not set forth any basis for him having personal knowledge underlying any of the purported factual disputes of Defendants' statement of undisputed material facts, including the factual disputes related to events on the night of the Jail cell move underlying Plaintiffs' complaints, the Court does not consider Plaintiffs' counsel's statements regarding these factual disputes as evidence for purposes of summary judgment. *See Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 667 (6th Cir. 2005) (holding that "[a]ll affidavits, regardless of the author, must be made on personal knowledge and set forth facts that would be admissible in evidence." (citing Fed. R. Civ. P. 56(e); *Beyah v. Coughlin,* 789 F.2d 986, 989 (2d Cir. 1986) (noting an attorney affidavit was improper because it was not based on a personal knowledge of the events giving rise to the underlying litigation))).

Also, as Plaintiffs' operative complaints are unsworn, the Court does not consider the allegations therein evidence for purposes of summary judgment. *See Farr v. Centurion of Tennessee, LLC*, No. 21-5094, 2022 WL 18457630, at *1 (6th Cir. Aug. 1, 2022) (noting that the "district court . . . properly declined to consider as evidence the allegations in [the plaintiff's] complaint and the arguments in his responses to the motions for summary judgment . . . because his complaint was not verified and his responses were not sworn or submitted under penalty of perjury") (citations omitted).

Plaintiff Deloney asserts the following claims against all Defendants:

1. Claims for violations of his rights to due process and equal protection under the Fourteenth Amendment;

2. An Eighth Amendment claim;

3. A claim for failure to train, supervise, and discipline; and

6

4. Several claims for violation of Tennessee law.

[*Deloney*, 1:22-CV-94 Doc. 6 at 6–13.] In his complaint, Plaintiff Bell asserts the following claims against all Defendants:

1. An Eighth Amendment claim for failure to protect;

2. A *Monell* claim for failure to train, supervise, and discipline; and

3. Several claims for violation of Tennessee law.

[Doc. 25 p. 12–18.]

Also in his complaint, Plaintiff Bell lists events alleged to have occurred at the Jail between mid-February 2020, and January 3, 2023, which he claims establish that the Jail "is notorious for its failure to provide adequate medical care to inmates, inhuman[e] living conditions, and failure to protect inmates from violence." [*Id.* at 3–10.] But only two of these events occurred before the April 23, 2021, inmate assault underlying Plaintiffs' complaints, namely: (1) "in mid-February of 2020, [] federal Judge Sandy Mattice, after consultation with federal Judge Travis McDonough, directed all fifty-two federal inmates housed in [Jail] to be transferred out of [Jail] and put into neighboring facilities due to concern for the inmates' safety"; and (2) "[o]n October 5, 2020, five [Jail] inmates were charged with attempted first-degree murder arising from an attack on a fellow prisoner that lasted for one to two hours and left the victim with [seventy-three] stab wounds." [Doc. 25 ¶¶ 3, 14.] The Court has not located any admissible proof in the record for any of the alleged events.

### C. Analysis

#### 1. Equal Protection

As set forth above, Plaintiff Deloney purports to bring a claim for violation of his right to equal protection under the Fourteenth Amendment. The Equal Protection Clause commands that

7

no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). In order to state a viable equal protection claim, "a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)).

Plaintiff Deloney's complaint does not allow the Court to plausibly infer that any Defendant treated him disparately as to other similarly situated inmates in a manner that burdened a fundamental right, targeted a suspect class, or had no rational basis.[3] As such, the complaint fails to state a plausible equal protection claim, and this claim is **DISMISSED**.

    2.    **Due Process**

As set forth above, Plaintiff Deloney also purports to bring a claim for violation of his right to due process under the Fourteenth Amendment. To the extent that Plaintiff Deloney bases this

---

[3] Defendants do not address this claim in their motions for summary judgment. However, under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive a PLRA review, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

8

Case 1:22-cv-00093-CLC-MJD   Document 67   Filed 02/21/25   Page 8 of 18   PageID #: 6866

due process claim on his assertion that Defendants failed to protect him from G4 inmates who posed a risk of harm to him due to Jail officers moving him to G4, the Court will address it below.

But to the extent that Plaintiff Deloney asserts that he was entitled to procedural due process prior to his move to G4, he has failed to allege a plausible due process claim. Specifically, in *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court found that a prisoner is entitled to the protections of due process only when a sanction "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484, 487; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998). As Plaintiff Deloney does not allege or provide any facts suggesting that Jail officials' decision to move him to G4 affected the length of his confinement or imposed an atypical or substantial hardship on him in relation to his ordinary confinement, his complaint fails to state a procedural due process claim upon which relief may be granted under § 1983, and this claim is **DISMISSED**.

### 3. Failure to Protect

Plaintiffs also seek to hold Defendant Hammond liable in his individual capacity for his alleged failure to protect them from the attack on them by other inmates, for which Plaintiffs cite both the Fourteenth and Eighth Amendments. Because it appears from Plaintiffs' complaints that they were pretrial detainees at the time of the incidents underlying their complaints, the Court analyzes these failure to protect claims under the Fourteenth, rather than the Eighth, Amendment.[4] *See Brawner v. Scott Cnty., Tenn.,* 14 F.4th 585, 596 (6th Cir. 2021).

---

[4] The Fourteenth Amendment provides pretrial detainees more protection than the Eighth Amendment. *See Love v. Franklin Cnty.*, 376 F. Supp. 3d 740, 745 (E.D. Ky. 2019) (finding "the Fourteenth Amendment affords pretrial detainees greater protections than those afforded to convicted prisoners by the Eighth Amendment") (citations omitted). Because the Court finds that Plaintiffs have failed to establish a genuine issue of material fact for their failure to protect claims

9

Under the Fourteenth Amendment, pretrial detainees cannot be subjected to punishment prior to a determination of guilt. *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015) ("[P]retrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'") (citation omitted). Accordingly, for a jury to find that Defendant Hammond failed to protect Plaintiffs from other inmates, Plaintiffs must set forth evidence that Defendant Hammond "acted deliberately (not accidentally), [and] also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305, 317 (6th Cir. 2023) (quoting *Brawner*, 14 F.4th at 596).

Plaintiffs have not met this burden. In their memoranda in support of their responses in opposition to Defendants' motions for summary judgment, Plaintiffs appear to assert that Defendant Hammond is personally liable for the attack on them due to various administrative duties he performed or failed to perform, including but not limited to approving a merger of Jail populations, seeking the Commission's approval of that merger, failing to have an appropriate review process for Jail incident reports, ignoring security issues flagged during the Jail merger in 2020–2021, ignoring the concerns of federal judges, failing to properly train and oversee Jail officers, and ignoring risks of gang activity and retaliation despite knowledge that inmates had contraband, including cell phones and shanks, and an ability to manipulate certain cell locks. [Doc. 65 at 18–21; Doc. 65-1 at 18–21.] To support these assertions, Plaintiffs generally refer to various documents and statements, including a CoreCivic notice regarding Jail locks, advice from a commissioner about the Jail's capacity, an allegedly inadequate policy manual, a letter from "PFM

---

under the Fourteenth Amendment, it is evident that Plaintiffs' failure to protect claims also would not survive Eighth Amendment scrutiny.

Tom Morsch . . . the Capital Budget Needs, citizens at public meetings, and a federal judge's order . . . ." [*Id*.]

But Plaintiffs do not specifically cite the record documents on which they rely for these assertions in a manner that the Court can locate them. [*See*, *e.g.*, *id*.] This is especially troubling because the Court previously ordered the parties to "carefully cite the materials in the record on which they rely for their summary judgment arguments." [Doc. 47 at 2 (citing Fed. R. Civ. P. 56(c)(3) (providing that "[t]he court need consider only the cited materials . . . .")).] And this Court declines to search the extensive record in this case for evidence that would allow Plaintiffs' claims to survive summary judgment. *See Tucker v. Tennessee,* 539 F.3d 526, 531 (6th Cir. 2008) (noting "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." (quoting *Street v. J.C. Bradford & Co.* 886 F.2d 1472, 1479–80 (6th Cir. 1989))).

Moreover, Plaintiffs have not cited, and the Court has not located, any proof in the record that Defendant Hammond was in any way personally involved in moving Plaintiffs from Echo 1 to G4. While, as set forth above, Plaintiffs allege that Defendant Hammond performed or failed to perform various duties of his job, none of these alleged acts or omissions relate specifically to Jail officers moving Plaintiffs to G4, and Defendant Hammond cannot be liable for the acts of others based on his supervisory position. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted); *Iqbal*, 556 U.S. at 676 (noting that "our precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior"); *Troutman v. Louisville Metro Dep't of Corrs*., 979 F.3d 472, 487–88 (6th Cir. 2020)

11

(providing that "at minimum a plaintiff must show that a supervisory official at least implicitly authorized, approved[,] or knowingly acquiesced in the unconstitutional conduct of the offending subordinate" in order for the supervisory official to be liable for a subordinate's acts under § 1983 (internal quotation marks and citations omitted)). Nor have Plaintiffs alleged or specifically cited any proof in the record from which a reasonable jury could find that Defendant Hammond actively abandoned his duties as Sheriff in a manner that led to potential danger to inmates, such that he could be liable under § 1983 for failing to protect Plaintiffs from the inmate attack. *See id*. Accordingly, Defendant Hammond is entitled to summary judgment as to Plaintiffs' claims against him in his individual capacity.

The Court additionally notes that Plaintiffs have not cited any proof that that would allow a jury to reasonably find that any Jail officer moved Plaintiffs to G4 despite a known or obvious substantial risk of harm to Plaintiffs. And, as set forth above, Defendants have set forth undisputed proof that Jail officers moved Plaintiffs to G4 only after determining that this was the appropriate security area for them, as it housed members of Plaintiffs' own gang and did not house members of other rival gangs. [Doc. 62 ¶¶ 10–11]. While Plaintiffs assert that the relevant video footage "does not appear to show" that Jail officers questioned Plaintiffs about any risk to them in G4 they do not allege that the video footage blatantly contradicts Defendants' sworn proof that (1) Jail officers determined that G4 was a safe housing area for Plaintiffs after examining a number of factors, and (2) Jail officers only moved Plaintiffs into G4 after Plaintiffs failed to name any incompatible inmates in G4 and/or any inmates with whom they had issues in G4 after questioning by Jail officers. [Doc. 65 at 6; Doc. 65-1 at 6; *see* Doc. 62-8 ¶¶ 19–22; Doc. 62-11 ¶¶ 18–22.] And the Court has reviewed the video footage and specifically finds that it does not blatantly contradict Defendants' proof that Jail officers determined that G4 was a safe housing area for

12

Plaintiffs and Plaintiffs never gave Jail officers any specific reason to think otherwise. The Court further notes that Plaintiffs have not come forward with any proof that they told any Jail officer about a risk of harm to them in G4, despite being questioned individually prior to relocation. [Doc. 65 at 6; Doc. 65-1 at 6.]

Additionally, as set forth above, in their unsworn complaints, Plaintiffs allege that G4 had a notorious reputation for violence against incoming inmates. [Doc. 25 ¶ 11; *Deloney*, 1:22-CV-94, Doc. 6 ¶ 18.] Also, in his unsworn complaint, Plaintiff Bell alleges that, prior to the inmate attack at issue in Plaintiffs' complaints, Judge Mattice removed federal inmates from the Jail and a single inmate-on-inmate stabbing incident occurred in the Jail. [Doc. 25 ¶ 3.] However, these unsworn statements are not admissible evidence, and the Court therefore cannot consider them for purposes of summary judgment. *See Farr*, 2022 WL 18457630, at *1. And Plaintiffs have not cited any admissible evidence in the record about G4's reputation, the reason[5] for the removal of federal inmates from the Jail, or the single inmate-on-inmate stabbing incident in the Jail that Plaintiffs allege occurred prior to the incident underlying their complaint. Further, while Plaintiff Bell also lists a number of other incidents that occurred at the Jail after the attack on Plaintiffs in G4,[6] Plaintiff Bell does not allege, nor is the Court aware of, any theory under which these

---

[5] Notably, the news report on which Plaintiffs rely to assert that this move was due to the safety of the federal inmates cites only unspecified and undisclosed "sources" for this assertion. *See* https://www.chattanoogan.com/2020/2/15/404142/Federal-Judges-Move-Federal-Inmates.aspx (last visited Jan. 27, 2025).

[6] This includes Plaintiffs' counsel's repeated, uncited assertion that Defendant Hamilton County had a policy of making the Jail "Silverdale hell." Specifically, documents in the record demonstrate that this reference arises from the fact that on May 3, 2023, which is more than two years after the incident underlying Plaintiffs' complaints, a Hamilton County commissioner stated "that the [J]ail should not be a hotel for criminals, rather it should be a hotel-hell." [Doc. 40-2 at 22]. However, Plaintiffs set forth no evidence of any connection between this May 3, 2023, statement and any notice to a Jail official of any danger to Plaintiffs in G4 on the evening of April 23, 2021.

13

Case 1:22-cv-00093-CLC-MJD   Document 67   Filed 02/21/25   Page 13 of 18
PageID #: 6871

subsequent incidents could be relevant to establishing that any Jail officer knew or should have known of an obvious risk of harm to Plaintiffs from their move to G4 at the time of that move.

The Court also notes that, as set forth above, Plaintiffs filed 644 pages of Hamilton County Sheriff's Office "Use of Force" and "Response to Resistance" reports in support of their response in opposition to Defendants' motions for summary judgment. [*See* Docs. 65-7, 65-8.] However, Plaintiffs do not specifically cite any of these reports in a manner that allows the Court to locate relevant information in them. Nor do Plaintiffs adequately cite any proof connecting these reports to their failure to protect claim in a manner that would allow the Court to find that the reports contain evidence from which a reasonable jury could find that any Jail official disregarded a known or obvious risk to Plaintiffs in moving them to G4. The Court declines to search the extensive record for evidence that would allow Plaintiffs' failure to protect claims to survive summary judgment. *See Tucker,* 539 F.3d at 531.

Accordingly, Plaintiffs have not set forth any proof from which a jury could reasonably find that Defendant Hammond or any other Jail officer violated their constitutional rights with regard to the attack on Plaintiffs.

### 4. *Monell*

Plaintiffs have also sued Defendant Hamilton County and Defendant Hammond in his official capacity under 42 U.S.C. § 1983 based on the assertion that they failed to properly train, supervise, and/or discipline Hamilton County Jail officers regarding protection and segregation of inmates and various policies. The Court treats Plaintiff's claims against Defendant Hammond in his official capacity as against Defendant Hamilton County. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 690 n.55 (1978)

("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent").

For a municipality to be liable under § 1983, the plaintiff must establish that an official custom or policy of that entity caused a violation of his constitutional rights. *Monell*, 436 U.S. at 694. However, where no violation of a plaintiff's constitutional rights occurred, a municipality cannot be liable under this theory. *Chambers v. Sanders*, 63 F.4th 1092, 1101–02 (6th Cir. 2023) ("[t]here can be no liability under *Monell* without an underlying constitutional violation." (quoting *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014))).

As the Court found above that Plaintiffs have not set forth any evidence from which a reasonable jury could find the attack on them underlying their complaints resulted from a constitutional violation, their *Monell* claims also fail. *Id.*

The Court further finds that Plaintiffs have not set forth any proof to support a reasonable jury finding Defendant Hamilton County liable for failure to train, supervise, or discipline Jail officers. A municipality may be liable for failing to train or supervise its officers under § 1983 "where the failure to train amounts to deliberate indifference to the rights of person with whom the police come into contact." *Canton v. City of Harris*, 489 U.S. 378, 388 (1989).

> There are two ways to prove that the inadequacy of a training program is the result of a municipality's deliberate indifference. A plaintiff may prove (1) a pattern of similar constitutional violations by untrained employees or (2) a single violation of federal rights, accompanied by a showing that [the municipality] has failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation.

*Berry v. Delaware Cnty. Sheriff's Off.*, 796 F. App'x 857, 862 (6th Cir. 2019) (internal quotations and citations omitted).

In this case, Plaintiff has not come forward with any evidence to support a reasonable jury finding (1) that untrained employees committed a "pattern of similar constitutional violations," or

15

(2) any other failure to train Jail employees. *See id*. While Plaintiff Bell lists a number of incidents in his unsworn complaint that he asserts shows a pattern of similar constitutional violations, the list is insufficient to create a genuine issue of fact as to Plaintiffs' *Monell* claims for various reasons, including the following: (1) the list is unsworn; (2) the list only includes one incident of Jail inmate on inmate violence that preceded the incident in Plaintiffs' complaints; and (3) Plaintiffs do not cite any admissible evidence in the record that "untrained employees" were responsible for the incident underlying their complaints or any other incidents listed in Plaintiff Bell's unsworn complaint. Moreover, Defendants have presented undisputed proof that (1) three Jail officers who participated in moving Plaintiffs received initial training and annual training each year; and (2) Defendant Hamilton County requires its officers receive initial training and annual training and has policies that comply with relevant law enforcement requirements. [Doc. 62-1 at 2, 5–6; Doc. 62-8 at 2, 5–6; Doc. 62-11 at 2, 5.] Plaintiffs have failed to present any proof from which a jury could reasonably find that any Jail officer's training was inadequate.

In their memoranda, Plaintiffs attempt to cite a Jail training policy they claim is inadequate to support the assertion that Defendant Hamilton County failed to adequately train Jail officers. [Doc. 65 at 8; Doc. 65-1 at 8.] But Plaintiffs inadequately cite the Jail policy on which they seek to rely for this statement but instead cite only use the "*Id.*" citation, even though the document they cited before this "*Id.*" citation was a Jail incident log entry, not a jail training policy. [Doc. 65 at 7–8; Doc. 65-1 at 7–8]. Plaintiffs also attempt to rely on a Jail training video titled "The Most Gullible Prison Guard Ever - Key & Peele, Con Games Inmates Play, Avoiding Inmate Setups," for which they cite "Exhibit 25," to support their assertion that Defendant Hamilton County provided Jail officers inadequate training. [Doc. 65 at 8; Doc. 65-1 at 8.] Unfortunately, the Court again cannot locate this video in the record based on Plaintiffs' citation. But even if the Court could locate this training video, Plaintiffs do not allege or cite any proof in the record that

16

Defendant Hamilton County's act of training Jail officers to recognize inmate "con games" or avoid inmate "setups" was due to deliberate indifference rather than an effort to help Jail officers avoid becoming victims of manipulative inmates. [*See* Doc. 65 at 8; Doc. 65-1 at 8.]

Plaintiffs also repeatedly insist in their memoranda that Defendant Hamilton County (1) should have had a policy of training officers to identify potential risks to inmates from cell moves, including checking for conflicting inmate gang affiliations; (2) failed to address various security issues, (3) allowed the Jail to go to "overcapacity" despite known security and safety concerns; and (4) did not have meaningful review of Jail incident reports. [Doc. 65 at 12–16; Doc. 65-1 at 12–16]. But yet again, while Plaintiffs cite the record to support these assertions, the Court cannot locate the documents on which Plaintiffs rely in the record based on Plaintiffs' citations. Regardless, however, these arguments are wholly unpersuasive as Plaintiffs do not allege, much less cite any admissible proof in the record to show, that the attack on them was due to conflicting gang affiliations, Jail security issues, or Jail overcapacity, or that the circumstances of any prior violent incidents in the Jail put Jail officials on notice of a lack of proper Jail training regarding cell transfers such as the one underlying Plaintiff's claims.

Accordingly, Defendants are entitled to summary judgment on Plaintiffs' *Monell* claims.

### 5. State Law Claims

Because the Court grants summary judgment to Defendants on Plaintiffs' federal claims, the Court will exercise its discretion to decline to exercise supplemental jurisdiction over any remaining state law claims by dismissing these claims without prejudice. *S*28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

V. **CONCLUSION**

For the reasons set forth above:

1. The Clerk of Court is **DIRECTED** to terminate all pending motions in the member case, *Deloney*, 1:22-CV-94 [Docs. 49, 54, 56, 59, 61, 65];

2. Plaintiffs' motion for extension [Doc. 64] is **GRANTED** to the extent that the Court considers Plaintiffs' response to the pending motions for summary judgment [Doc. 65] and Defendants' reply [Doc. 66] timely filed;

3. The John Doe Defendants' motion for summary judgment [Doc. 48] is **DENIED as moot**.

4. Defendant Hamilton County and Defendant Hammond's motions for summary judgment [Docs. 53, 55, 58, 60] will be **GRANTED** as to Plaintiffs' federal claims;

5. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims; and

6. Both the lead case and the member case, *Deloney*, 1:22-CV-94, will be **DISMISSED**.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

**ENTER:**

/s/_____
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**